IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| ALLSTATE INSURANCE COMPANY, ) <br> ) <br> Plaintiff, ) <br> ) <br> vs. ) <br> ) <br> RICHARD D. LEONG, ) <br> individually and as trustee ) <br> of the Richard D. Leong ) <br> Revocable Trust; and ELEANOR ) <br> LEONG, individually and as ) <br> trustee of the Eleanor Leong ) <br> Revocable Trust, ) <br> ) <br> Defendants ) <br> _____ ) | CIVIL NO. 09-00217 SOM/KSC <br><br> ORDER GRANTING IN PART AND <br> DENYING IN PART MOTIONS FOR <br> SUMMARY JUDGMENT CONCERNING <br> INSURANCE COVERAGE |

ORDER GRANTING IN PART AND DENYING IN PART MOTIONS FOR SUMMARY
JUDGMENT CONCERNING INSURANCE COVERAGE

I.      INTRODUCTION.

This is a diversity action involving insurance coverage for alleged damage to a retaining wall and diminution in value of a home.  Richard and Eleanor Leong own residential property on which they allegedly planted trees over a City and County of Honolulu sewer line.  The trees' roots may have damaged the sewer line, which may have caused an underground leak from the line. The tree roots may have blocked the sewer line, causing a discharge through a manhole cover.  The underground leak from the sewer line, combined with the escape of effluent through the manhole cover, may have caused damage to a downhill neighbor's retaining wall.

The neighbors, Randolph and Andrea Neal, sued the City and County of Honolulu (the "City") in state court, alleging that the leak of "sewage and effluent" from the sewer system had damaged their retaining wall. The Neals alleged negligence (failure to properly maintain the sewage system), trespass (sewage and effluent flowing onto the Neals' property without permission), nuisance (sewage and effluent flowing onto the Neals' property), and taking of property (diminution of the Neals' property value because the Neals must build a "butressing wall" that will decrease the amount of usable property). See Complaint, Neal v. City and County of Honolulu, Civ. No. 04-1-2276-12 KSSA (Dec. 7, 2004) (attached as Exhibit A to Allstate Insurance Company's Concise Statement, Docket No. 27-1).

The City has filed a Third-Party Complaint against the Leongs, claiming that, to the extent the City is liable to the Neals, the Leongs must indemnify the City for the damages. The Third-Party Complaint asserts: 1) that the Leongs breached a covenant not to plant trees over the area of the sewer easement; 2) that the trees over the easement constitute a trespass; and 3) that the Leongs were negligent in planting trees in a manner that allowed their roots to interfere with, block, and/or obstruct the sewer line. See Defendant and Third-Party Plaintiff City and County of Honolulu's Third-Part Complaint, Neal v. City and County of Honolulu, Civ. No. 04-1-2276-12 KSSA (Apr. 1, 2005)

(attached as Exhibit B to Allstate Insurance Company's Concise Statement, Docket No. 27-2).

The Leongs tendered the defense of the state-court action to Allstate under their Deluxe Homeowner's Policy, No. 087803228 ("Policy"). Allstate has been defending the Leongs under a reservation of rights. See Letter from Cindy Criss of Allstate to Richard Leong (June 14, 2005) (attached as Exhibit D to Allstate Insurance Company's Concise Statement, Docket No. 27-4).

Allstate filed this declaratory judgment action, seeking a determination that it has no duty to defend or indemnify the Leongs under the Policy. Before the court are motions for summary judgment by Allstate and the Leongs. See Docket Nos. 26 and 29. Both motions seek a determination of rights under the Policy. The court rules that Allstate has a duty to defend and possibly to indemnify the Leongs from the claims pertaining to damage to the retaining wall. However, Allstate has no duty to defend or indemnify the Leongs with respect to any claims for diminution in value or with respect to any claims for the clean up of raw sewage, if asserted.

II.     SUMMARY JUDGMENT STANDARD.

Summary judgment shall be granted when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material

fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  One of the principal purposes of summary judgment is to identify and dispose of factually unsupported claims and defenses.  <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323-24 (1986).  Accordingly, "[o]nly admissible evidence may be considered in deciding a motion for summary judgment."  <u>Miller v. Glenn Miller Prods., Inc.</u>, 454 F.3d 975, 988 (9th Cir. 2006).  Summary judgment must be granted against a party that fails to demonstrate facts to establish what will be an essential element at trial.  <u>See</u> <u>Celotex</u>, 477 U.S. at 323.  A moving party has both the initial burden of production and the ultimate burden of persuasion on a motion for summary judgment. <u>Nissan Fire & Marine Ins. Co. v. Fritz Cos.</u>, 210 F.3d 1099, 1102 (9th Cir. 2000).  The burden initially falls on the moving party to identify for the court "those portions of the materials on file that it believes demonstrate the absence of any genuine issue of material fact."  <u>T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n</u>, 809 F.2d 626, 630 (9th Cir. 1987) (citing <u>Celotex Corp.</u>, 477 U.S. at 323); <u>accord</u> <u>Miller</u>, 454 F.3d at 987. "A fact is material if it could affect the outcome of the suit under the governing substantive law."  <u>Miller</u>, 454 F.3d at 987.

When the moving party fails to carry its initial burden of production, "the nonmoving party has no obligation to produce anything."  In such a case, the nonmoving party may defeat the

4

motion for summary judgment without producing anything.  <u>Nissan Fire</u>, 210 F.3d at 1102-03.  On the other hand, when the moving party meets its initial burden on a summary judgment motion, the "burden then shifts to the nonmoving party to establish, beyond the pleadings, that there is a genuine issue for trial."  <u>Miller</u>, 454 F.3d at 987.  This means that the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts."  <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586 (1986) (footnote omitted).  The nonmoving party may not rely on the mere allegations in the pleadings and instead "must set forth specific facts showing that there is a genuine issue for trial."  <u>Porter v. Cal. Dep't of Corr.</u>, 419 F.3d 885, 891 (9th Cir. 2005) (quoting <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 256 (1986)).  "A genuine dispute arises if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  <u>California v. Campbell</u>, 319 F.3d 1161, 1166 (9th Cir. 2003); <u>Addisu v. Fred Meyer, Inc.</u>, 198 F.3d 1130, 1134 (9th Cir. 2000) ("There must be enough doubt for a 'reasonable trier of fact' to find for plaintiffs in order to defeat the summary judgment motion.").

On a summary judgment motion, "the nonmoving party's evidence is to be believed, and all justifiable inferences are to be drawn in that party's favor."  <u>Miller</u>, 454 F.3d at 988 (quotations and brackets omitted).

5

III.     APPLICABLE POLICY LANGUAGE.

Allstate insured the Leongs under a Deluxe Plus Homeowner's Policy, which states: "**Allstate** will pay damages which an **insured person** becomes legally obligated to pay because of **bodily injury** or **property damage** arising from an **occurrence** to which this policy applies, and is covered by this part of the policy." See Policy, Coverage X (Family Liability Protection). The Policy defines "occurrence" as "including continuous or repeated exposure to substantially the same general harmful conditions during the policy period, resulting in **bodily injury** or **property damage**." The Policy defines "property damage" as "physical injury to or destruction of tangible property, including loss of its use resulting from such physical injury or destruction."

The Policy excludes from coverage "**property damage** consisting of or caused by vapors, fumes, acids, toxic chemicals, toxic gasses, toxic liquids, toxic solids, waste materials or other irritants, contaminants or pollutants."

IV.     ANALYSIS.

   A.   General Law Governing Insurance Contracts.

Federal courts sitting in diversity apply state substantive law and federal procedural law. See Snead v. Metro. Prop. & Cas. Ins. Co., 237 F.3d 1080, 1090 (9th Cir. 2001). When interpreting state law, a federal court is bound by the decisions

of a state's highest court.  <u>Ariz. Elec. Power Coop. v. Berkeley</u>, 59 F.3d 988, 991 (9th Cir. 1995).  In the absence of a governing state decision, a federal court attempts to predict how the highest state court would decide the issue, using intermediate appellate court decisions, decisions from other jurisdictions, statutes, treatises, and restatements as guidance.  <u>Id.</u>; <u>see also</u> <u>Burlington Ins. Co. v. Oceanic Design & Constr., Inc.</u>, 383 F.3d 940, 944 (9th Cir. 2004) ("To the extent this case raises issues of first impression, our court, sitting in diversity, must use its best judgment to predict how the Hawaii Supreme Court would decide the issue." (quotation and brackets omitted)).

        Under Hawaii law, general rules of contract construction apply to the interpretation of insurance contracts.  <u>Dawes v. First Ins. Co. of Haw.</u>, 77 Haw. 117, 121, 883 P.2d 38, 42 (1994).  Hawaii law requires that an insurance policy be read as a whole and construed in accordance with the plain meaning of its terms, unless it appears that a different meaning is intended.  <u>Id.</u> at 121, 883 P.2d at 42; <u>First Ins. Co. of Haw. v. State</u>, 66 Haw. 413, 423, 665 P.2d 648, 655 (Haw. 1983); <u>see also</u> Haw. Rev. Stat. § 431:10-237 (Michie 2004) ("[e]very insurance contract shall be construed according to the entirety of its terms and conditions as set forth in the policy").

        Because insurance contracts are contracts of adhesion, they must be construed liberally in favor of the insured, and any

ambiguity must be resolved against the insurer.  Put another way, the rule is that policies are to be construed in accordance with the reasonable expectations of a layperson.  Dawes, 77 Haw. at 131, 883 P.2d at 42.

   The burden is on the insured to establish coverage under an insurance policy.  See Sentinel Ins. Co. v. First Ins. Co. of Haw., 76 Haw. 277, 291 n.13, 875 P.2d 894, 909 n.13 (1994) (as amended on grant of reconsideration).  The insurer has the burden of establishing the applicability of an exclusion.  See id. at 297, 875 P.2d at 914.

   The duty to indemnify is owed "for any loss or injury which comes within the coverage provisions of the policy, provided it is not removed from coverage by a policy exclusion." Dairy Road Partners v. Island Ins., 92 Haw. 398, 413, 922 P.2d 93, 108 (2000).  The obligation to defend an insured is broader than the duty to indemnify.  The duty to defend arises when there is any potential or possibility for coverage.  Sentinel, 76 Haw. at 287, 875 P.2d at 904.  However, when the pleadings fail to allege any basis for recovery under an insurance policy, the insurer has no duty to defend.  Pancakes of Haw. v. Pomare Props., 85 Haw. 286, 291, 944 P.2d 83, 88 (1997).  In other words, for Allstate to obtain summary judgment on the subject of its duty to defend, it must prove that it would be impossible for a claim in the underlying lawsuit to be covered by the Policy.

See Tri-S Corp. v. W. World Ins. Co., 110 Haw. 473, 488, 135 P.3d 82, 97 (2006).

"Hawaii adheres to the 'complaint allegation rule.'" Burlington Ins. Co., 383 F.3d at 944 (citing Pancakes of Hawaii, Inc. v. Pomare Props. Corp., 85 Haw. 286, 994 P.2d 83 (Haw. Ct. App. 1997)). In that regard,

> The focus is on the alleged claims and facts. The duty to defend "is limited to situations where the pleadings have alleged claims for relief which fall within the terms for coverage of the insurance contract. 'Where pleadings fail to allege any basis for recovery within the coverage clause, the insurer has no obligation to defend.'"

Id. at 944-45 (citing Hawaiian Holiday Macadamia Nut Co. v. Indus. Indem. Co., 76 Haw. 166, 872 P.2d 230)).

      B.    Allstate Has a Duty to Defend and Potentially to Indemnify With Respect to the Alleged Damage to the Retaining Wall.

The state-court complaint alleges that the retaining wall was damaged by "sewage and effluent" that "built up" behind it. State Court Complaint ¶ 15. An engineer's report prepared after the state-court complaint was filed indicates that the wall may have been damaged by a combination of events. The engineer believes that there was a prolonged sewer leak from 1996 to 2001 that saturated the ground under and around the retaining wall. When the sewer pipe was allegedly clogged by tree roots on or about August 9, 2001, the sewer pipe overflowed at the manhole cover near the retaining wall and created a puddle in the Neals'

yard. The engineer believes that the combination of the pressure from this puddle with the saturated ground caused the wall to crack and tilt. See Letter Report by S.K. Djou (Nov. 28, 2005) (attached to Leongs' Concise Statement, Docket No. 30-1). Another engineer believes that the retaining wall acted like a "concrete dam" and was damaged when the "sewage water" backed up against it, causing excessive pressure on it. See Letter from Alfred A. Yee to Michael Tom (Feb. 14, 2008) (attached to Leongs' Concise Statement, Docket No. 30-3).

Whether Allstate has a duty to defend or indemnify with respect to any damage to the retaining wall turns on whether the pollution exclusion applies. Allstate argues that, because the damage to the Neals' retaining wall was allegedly caused by the sewage and effluent leaks, the matter falls within the pollution exclusion, which excludes from coverage any property damage "consisting of or caused by . . . waste materials or other irritants, contaminants or pollutants." Allstate's argument is not persuasive, as it assumes that the damage consists of or was caused by "waste materials or other irritants, contaminants or pollutants."

The Policy excludes "property damage consisting of or caused by . . . waste materials or other irritants, contaminants or pollutants." The court rules that, under the circumstances presented here, that language is ambiguous, as it is unclear

whether the overflow/leak from the sewage pipe constitutes "waste materials or other irritants, contaminants or pollutants." Those terms are not defined by the Policy. Allstate assumes that any leak from the sewer line must be "waste materials or other irritants, contaminants or pollutants." That assumption may or may not be justified. Certainly, untreated sewage can constitute a health hazard. See, e.g., State v. Ford, 84 Haw. 65, 72, 929 P.2d 78, 85 (1996) (noting that Hawaii's legislature was clearly concerned over a threat to public health and safety posed by unlawful sewage disposal). But Honolulu's sewer pipes contain more than untreated sewage that has been flushed down a toilet.

The City and County of Honolulu's Department of Environmental Services' website indicates that Honolulu's sewer pipes contain wastewater from toilets, sinks, showers, and other drains in peoples' homes (dishwashers, laundry machines, etc.). See Honolulu Department of Environmental Services Home Page, http://wetserver.net/env/wastewater/index.html (last visited May 11, 2010); Honolulu Department of Environmental Services, After the Flush, http://wetserver.net/env/wastewater/where_does_it_go.html (last visited May 11, 2010). Rain also may enter sewer lines through leaky pipes or pipes missing end caps. See  Honolulu Department of Environmental Services, Your Sewer Responsibility, http://wetserver.net/env/wastewater/

11

sewer_responsibility.html (last visited May 11, 2010).[1]  Given the make-up of the contents of Honolulu's sewer pipes, an issue of fact exists as to whether the sewer pipe leaked "waste materials or other irritants, contaminants or pollutants."

Even if the court assumes that the sewer pipe leaked "waste materials or other irritants, contaminants or pollutants", the state-court complaint does not clearly allege that the property damage consisted of "waste materials or other irritants, contaminants or pollutants."  It does not, for example, seek monetary damages related to any clean up of raw sewage.  To the extent the state-court complaint might be read as making such an allegation, the pollution exclusion would bar coverage.  However, the state-court complaint is clearly not limited to seeking damages for the clean up of raw sewage.  Instead, it seeks damages for the harm allegedly caused to the retaining wall by the Leongs' tree roots.

Even if the court assumes that the sewer pipe leaked "waste materials or other irritants, contaminants or pollutants", it is unclear whether the damage to the retaining wall was <u>caused</u> by "waste materials or other irritants, contaminants or pollutants."  Considering the allegations in the state-court complaint and the opinions of the engineers, the court cannot

---

[1]Copies of these webs pages will be placed in the case file as Exhibits A, B, and C, respectively.

exclude the possibility that the damage to the retaining wall might have been caused by the pressure of the liquid that had built up against the wall, not by the hazardous or dangerous nature of what the liquid may have contained.  Whether that liquid was water, mostly water, or partially "waste materials" is irrelevant.  A layperson would not think that the pressure exerted on the wall by the liquid would have been excluded by the Policy's exclusion for "waste materials or other irritants, contaminants or pollutants."  An example may be helpful in demonstrating this principle.

       Imagine a father conducting a science experiment with his child in a home.  If the experiment goes awry and an explosion occurs, the corrosive agent might be released and damage the inside of the house.  Arguably, the damage would fall within a policy provision excluding from coverage property damage consisting of or caused by "waste materials or other irritants, contaminants or pollutants."  Suppose, however, that an open flame used in the experiment started a fire.  Arguably, damage caused by the fire would not be excluded by a similar exclusion for "waste materials or other irritants, contaminants or pollutants."  Although the damage would not have occurred but for the heating of the corrosive agent, the damage resulted not from the nature of the corrosive agent, but from the fire.  Similarly, the damage to the Neals' retaining wall may not have been caused

by the nature of the "waste material," but instead by the pressure of the liquid (which may have been mostly water) that built up against the wall.

Nor is it clear that property damage involving a sewage spill would always be excluded by a policy's exclusion for "waste materials or other irritants, contaminants or pollutants." Imagine heavy rains causing 1,000 gallons of raw sewage to flow into a large river. If the heavy rains caused the river to swell and then overflow several miles downstream, any resulting property damage to an insured's property would arguably fall outside a policy exclusion for damage consisting of or caused by "waste materials or other irritants, contaminants or pollutants." It may well be that the liquid that overflowed the stream bed contained one part per million of raw sewage, but a layperson might be unlikely to view the pollution exclusion as excluding coverage for what is, in essence, flood damage.

A few years ago, when Honolulu experienced more than 40 straight days of rain, the storm water lines could not handle the volume of water. Water flowed out of manhole covers and drains, flooding streets. If the content of this water was analyzed, it would have contained all sorts of particles that might be considered hazardous (i.e., antifreeze, oil, rubber, fertilizer and other things that were washed off roads and properties). If this water flooded a home, it is not at all clear that the flood

waters would constitute "waste materials or other irritants, contaminants or pollutants" simply because the water came from an overflowing storm water line.

Because the pressure of liquid on the retaining wall may have damaged the wall, and because that pressure possibly did not rely on "waste materials or other irritants, contaminants or pollutants," Allstate has a duty to defend the Leongs with respect to that claim.  See Sentinel, 76 Haw. at 287, 875 P.2d at 904.  If it is determined that the damage to the wall was not caused by "waste materials or other irritants, contaminants or pollutants," then Allstate also has a duty to indemnify the Leongs for any judgment concerning the retaining wall claim.

This court is not persuaded by Allstate's argument that providing coverage for damage from leaking sewer lines was not intended and will cause people who practice in the insurance area to have to adjust their thinking.  Under Hawaii law, any ambiguity in an insurance contract is interpreted against the insurer who was responsible for drafting the language contained in the insurance policy.  Allstate may or may not decide to change its standard policy language.  That is not an issue before this court.

### C. Allstate Has No Duty to Defend and Indemnify With Respect to the Alleged Economic Damages.

The state-court complaint alleges that the value of the Neals' property was diminished because the Neals were forced to build a support for the retaining wall, which took away usable property. As conceded by the Leongs at the hearing, Allstate has no duty to defend or indemnify arising out of this purely economic damage, which is not "property damage" for purposes of the Policy.

The Policy covers property damage, which is defined as "physical injury to or destruction of tangible property." Under Hawaii law, the diminution in value of property is purely economic harm that does not constitute damage to tangible property. See, e.g., Hawaiian Ins. & Guar. Co. v. Blair, 6 Haw. App. 447, 726 P.2d 1310 (1986) ("We conclude that 'diminution in value' is not 'property damage' when defined as either 'physical injury to . . . tangible property' or as 'loss of use of tangible property.'"); accord State Farm Fire & Cas. Co. v. Metro. Mgmt., 2007 WL 4157148, *9 (D. Haw., Nov. 23, 2007) ("Purely economic losses, unaccompanied by physical injury to tangible property or loss of use of that property, do not constitute 'property damage' within the meaning of a liability policy."). Accordingly, Allstate has no duty to defend or indemnify the Leongs with respect to the diminution in value claim in the state-court complaint.

V.        CONCLUSION.

For the reasons set forth above, the court rules that Allstate has a duty to defend (and may have a duty to indemnify) the Leongs with respect to claims arising out of alleged damage to the retaining wall.  However, Allstate has no duty to defend or indemnify the Leongs with respect to claims for the diminution in value of the Neals' property or for any clean up of raw sewage.  This order disposes of Allstate's Motion for Summary Judgment (Docket No. 26) and the Leongs' Motion for Summary Judgment (Docket No. 29).

The Clerk of Court is directed to enter judgment consistent with this order and to close this case.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, May 11, 2010.



/s/ Susan Oki Mollway
Susan Oki Mollway
United States District Judge

Allstate Ins. Co. v. Leong, et al., CIVIL NO. 09-00217 SOM/KSC; ORDER GRANTING IN PART AND DENYING IN PART MOTIONS FOR SUMMARY JUDGMENT CONCERNING INSURANCE COVERAGE